**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**BENJAMIN THOMAS** **PLAINTIFF**

**v. Case No. 5:25-CV-05267-DCF**

**SAMANTHA MOOREHOUSE, *et al.*** **DEFENDANTS**

# ORDER

In a Report and Recommendation, the Honorable Christy D. Comstock, United States Magistrate Judge, recommended that Plaintiff's complaint be dismissed without prejudice. (Doc. 7). Plaintiff timely filed his Objections. (Doc. 9). Based on a de novo review of the record, Plaintiff's Objections are OVERRULED, the Report and Recommendation is ADOPTED IN PART AND REJECTED IN PART, and this case will be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Benjamin Thomas is an individual with certain disabilities and uses trained service dogs as assistive devices. (Doc. 1-1, Complaint, p. 6.). Due to a spinal condition that requires him to avoid sudden pulling or twisting, he does not use a physical leash to control his service dogs. (Doc. 9-1, p. 4). Instead, he uses "voice commands, hand signals, body language, and a wireless collar system." (*Id.*).

The events giving rise to this dispute occurred on March 1, 2024, when

Thomas patronized Juicy Tails Fayetteville (hereinafter Juicy Tails) for an order of three pounds of crawfish. (*Id.* at 7). "To document his own experience and his service dogs' behavior using a wireless leash system," (*id.* at 11), Thomas "was recording upon approach of the establishment (*id.* at 8)." He attempted to enter the restaurant with his service dogs who did not appear to be wearing physical leashes. (*Id.* at 7). But Moorehouse did not allow Thomas to enter presumably because he did not produce the requested disability and service animal paperwork and because the dogs did not appear to be physically leashed. (*Id.*). Despite Moorehouse's initial denial, the proprietor of Juicy Tails allowed Thomas and his service dogs to enter the restaurant without providing any disability or service-animal documentation. (Doc. 1-1, p. 6). Thomas then ended the recording while placing and waiting for his order. (Doc. 9-1, p. 9).

After Thomas resumed recording and while standing near the register with his service dogs "lying calmly at [his] feet," (*id.* at 10), Moorehouse informed him that "her boss had granted permission for [him] to remain on the premises and complete his order (*id.* at 11)." Thomas asked for Moorehouse's name; Moorehouse asked Thomas to stop recording her. (*Id.*). Thomas said he had a right to document his own experience and that she was not the target of his recording; Moorehouse said, "I'll fix you," and called the police. (*Id.*). After "approximately forty-seven minutes," (Doc. 1-1, p. 14), Thomas received his

order and exited the restaurant. (Doc. 9-1, p. at 12).

Thomas then encountered Officer Hinton and Officer Vega in the parking lot who presumably informed him that the restaurant requested he be removed or issued a formal trespass warning. (*Id.* at 14). After some debate with the Officers about the law surrounding Arkansas criminal trespass, the ADA, and one-party-consent recording, Officer Vega stated "Well, sue me." (*Id.* at 14-16). Thomas then presumably returned to his day, albeit more disconcerted than when he started it.

On April 8, 2024, he filed an administrative complaint with the Fayetteville Police Department. (Doc. 1-1, p. 16). He asserts that an internal investigation by the Department found the Officers violated certain policies during their interaction with him. (*Id.*).

## II. PROCEDURAL HISTORY

In February 2025, Thomas (hereinafter Plaintiff) brought his first case arising from these facts against Defendants Officer Hinton, Officer Vega, Juicy Tails, Inc., and Fayetteville Police Department in *Benjamin Thomas v. Fayetteville Police Dep't, et al.*, Case No. 5:25-cv-05048-TLB. Plaintiff was permitted to file an Amended Complaint and a Second Amended Complaint in that case. (*Thomas v. Fayetteville*, No. 5:25-cv-05048-TLB, Docs. No. 6, 15). After preservice screening pursuant to 28 U.S.C. § 1915(e)(2)(b), it was found

that Plaintiff had failed to state a claim upon which relief could be granted. (*Id.* at Doc. 12). Upon judicial review of that recommendation, it was again found that Plaintiff had failed to state a claim, and his case was dismissed without prejudice in August 2025. (*Id.* at Doc. 16).

Thereafter, Plaintiff filed the instant case on December 22, 2025. (Doc. 1). He brings this case against the restaurant Juicy Tails, its manager or employee, Samantha Moorehouse, and two officers of the Fayetteville Police Department, Rachel Hinton and Vincent Vega. (Doc. 1-1, Complaint). He alleges violations of 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Arkansas Civil Rights Act (ACRA). (*Id.*). His Motion for Leave to Proceed in forma pauperis, filed concurrently with his Complaint, was granted on February 2, 2026, and his case was subjected to preservice screening once again. (Doc. 5). This case was reassigned to the undersigned on February 19, 2026. (Doc. 6).

The Magistrate Judge submitted her findings on the preservice screening on February 25, 2026, recommending this case be dismissed without prejudice. (Doc. 7, Report and Recommendations). In her analysis, the Magistrate Judge noted and considered the differences between Case No. 5:25-cv-05048-TLB and the instant case, namely the addition of Defendant Moorehouse, the assertion of two additional facts, and the addition of a § 1983 First Amendment retaliation

claim against the Fayetteville Police Officers. (*Id.* at 2-7). She concluded that these additions did not add substance to Plaintiff's claims. (*Id.*). And, apart from those additions, Plaintiff's claims were essentially identical to the allegations previously dismissed. (*Id.* at 2).

Plaintiff objected on March 12, 2026. (Doc. 9). He disagreed with the Magistrate Judge's analysis of the pleading and prescreening standards, the ADA, and the First Amendment. (*Id.*). As to pleading and prescreening, he believed the Magistrate Judge improperly held him to a summary-judgment standard. (*Id.* at 5-6). As to the ADA, Plaintiff argued that, because his dogs were under alternative control methods, his claim against Moorehouse is viable. (*Id.* at 6-8). Based on his right to record his interactions and his right to use service animals, he objected to the finding that his retaliation claims could not go forward. (*Id.* at 9-10).

Having reviewed the record in the previous case, the record in this case, the Report and Recommendation, and Plaintiff's Objections, the Court finds this matter ready for decision.

## III. LAW

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678. Instead, "[t]he complaint must allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up).

## IV. DISCUSSION

A district court reviews de novo those portions of a magistrate judge's report to which objection is made. 28 U.S.C. § 636(b)(1); *see Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996). Here, Plaintiff objects to the Magistrate Judge's findings and conclusion that this case should be dismissed without prejudice because it fails to state a claim. After a de novo review of the record, the Report and Recommendation, and Plaintiff's Objection, the Court finds the Magistrate Judge's findings proper but rejects the conclusion that this case should be dismissed without prejudice. The Court finds that this case should be dismissed with prejudice and overrules Plaintiff's objections.

While the Court recognizes that Plaintiff had an unsavory encounter at the restaurant, there is nothing in the record to show that any of the Defendants' actions would entitle Plaintiff to relief. Even assuming that all of Plaintiff's factual assertions are true, the law simply does not provide relief for any of the Defendants' actions in this case. As such, this case cannot proceed as pleaded in the Complaint, and it must be dismissed.

### A. There is no plausible claim stated under the ADA.

Plaintiff appears to allege that Moorehouse's actions violated his right to patronize a public accommodation. "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods,

services, [or] facilities . . . of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C.A. § 12182(a). A restaurant is a public accommodation under the ADA. 42 U.S.C.A. § 12181(7)(B). However, Title III of the ADA does not provide for private actions seeking damages. *Hillesheim v. Holiday Stationstores, Inc.*, 953 F.3d 1059, 1062 (8th Cir. 2020).

The Court notes that Plaintiff's own allegations establish that he entered the restaurant with his service dogs without providing disability documentation and that he received the food he ordered. While Moorehouse certainly slowed Plaintiff's initial entrance, he was seated and his order taken apparently without incident. Plaintiff admits that the rest of the employees "did not deny service or ask [him] to leave; rather, they continued to process his order in the ordinary course." (Doc. 9-1, p. 10).

While it may have been rude and inappropriate for Moorehouse to question Plaintiff and temporarily slow his access to the restaurant, the ADA does not "regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities." *Hicks v. L.S. Richardson Revocable Living Trust Dated 12/13/2011*, No. 4:24-CV-00356-RK, 2025 WL 27916, at *3 (W.D. Mo. Jan. 3, 2025). Even assuming all facts alleged in the Complaint are true, no relief may be granted under Title III of the ADA.

To the extent that Plaintiff asserts an ADA violation against the police officers in this case, the Court finds no colorable claim. Police officers who ask a customer with service dogs to leave a restaurant are not liable to the customer under the provision of the ADA barring disability discrimination by a public accommodation when the officers do not own, lease, or operate the restaurant. *See Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034 (8th Cir. 1998). There is nothing in the record to suggest Officer Hinton or Officer Vega owned, leased, or operated Juicy Tails when they presumably issued Plaintiff a trespass warning. Even assuming all facts in the light most favorable to Plaintiff, he is not entitled to relief for the police officers' actions under the ADA.

**B. There is no prima facie showing of retaliation under the ADA.**

Plaintiff appears to intend to allege that his video recording of Moorehouse was a statutorily protected activity, that Moorehouse took adverse action by calling the police on Plaintiff, and that a causal connection existed between the police call and the video recording.

The anti-retaliation provision of the ADA states in relevant part: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

Further, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

A prima facie case of retaliation under the ADA requires a showing that 1) the plaintiff engaged in a statutorily protected activity, 2) the defendant took adverse action against the plaintiff, and 3) a causal connection exists between the adverse action and the protected activity. *See Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911 (8th Cir. 2018); *Withers v. Johnson*, 763 F.3d 998 (8th Cir. 2014).

The act of making a recording "in order to inform the public" about a controversy qualifies as speech protected by the First Amendment. *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021). By Plaintiff's own admission, he made the video recording "[t]o document his own experience and his service dogs' behavior using a wireless leash system." (Doc. 9-1, p. 11). Plaintiff does not appear to have made the recording "to facilitate speech that will follow" and that was "analogous to news gathering." *See Ness*, 11 F.4th at 924. Therefore, Plaintiff's act of making a recording of Moorehouse was "unrelated to an expressive purpose" and, thus, not a statutorily protected activity. *See id.* As such, the Court finds no prima facie case of retaliation under the ADA.

**C. There is no prima facie showing of retaliation under § 1983.**

Plaintiff appears to allege that the police officers issued a trespass warning based on animus against him for recording them. In determining whether a First Amendment retaliation claim is subject to dismissal for failing to state a claim upon which relief could be granted, the court considers whether "the plaintiff can show that the defendant would not have taken the adverse action but for harboring "retaliatory animus" against the plaintiff because of his exercise of his First Amendment rights." *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022) (citing *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019)). Even if a defendant arrested or used force against a plaintiff in response to protected conduct, that response is not "retaliatory" if the response was driven by the defendant's understanding of his official duties and not by "animus." *Id.*

Citing *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020), Plaintiff asserts that the Eighth Circuit has recognized the right to record law-enforcement in the performance of their duties in public spaces; but he is simply incorrect. *Chestnut* involved a citizen who was not recording but simply observing police conducting traffic stops from "thirty to forty feet away and across the street." 947 F.3d at 1987. Specifically considering the First Amendment, the Eighth Circuit found that *Chestnut* did not clearly establish the right to observe police officers, much less the right to record them. *See Molina v. City of St. Louis*, 59

F.4th 334, 338 (8th Cir. 2023).

In fact, "[t]he Eighth Circuit's position is contrary to" "the majority of circuits" which have "'all concluded in published opinions that the First Amendment protects a right to film the police performing their duties in public.'" *Sahr v. City of Des Moines*, 666 F.Supp.3d 861, 890 (8th Cir. 2023) (citing *Irizarry v. Yehia*, 38 F.4th 1282, 1294 (10th Cir. 2022)).

Because there is no right to film police officers performing their duties in public in the Eighth Circuit, Plaintiff's recording of Officer Hinton and Officer Vega was not a statutorily protected activity. Moreover, there is nothing in the record to indicate that the officers prevented Plaintiff from recording the encounter. Nor did the officers prevent Plaintiff from patronizing Juicy Tails as he had already received his food and exited the restaurant by the time the officers responded to the scene. And, while the officers presumably issued a trespass warning against Plaintiff, the record shows that they did so in the course of their official duties, not out of animus against Plaintiff. Even if the officers harbored some animosity toward Plaintiff as he alleges, it cannot be said that such animosity was the "but-for cause" of their response to the scene to issue a trespass warning. *See Hartman v. Moore*, 547 U.S. 250, 260 (2006). As such, the Court finds no prima facie case of retaliation under § 1983.

Plaintiff fails to state a claim upon which relief could be granted, and this

case must be dismissed. Further, this is Plaintiff's fourth unsuccessful attempt to bring a case on these facts. The Court is hard pressed to imagine how further amendments might change the deficiencies in his arguments. Therefore, this dismissal will be with prejudice.

## V. CONCLUSION

For these reasons, the Court **ADOPTS IN PART AND REJECTS IN PART** the Report and Recommendation (Doc. 7) and **OVERRULES** Plaintiff's Objections (Doc. 9). Accordingly, Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED** this 28th day of September 2026.

/s/ David Clay Fowlkes
DAVID CLAY FOWLKES
UNITED STATES DISTRICT JUDGE